UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JOSEPH                                        CIVIL ACTION

VERSUS                                        NO: 11-559

WEBER MARINE, INC.                            SECTION: "J"(5)

### ORDER AND REASONS

Before the Court are Defendant Weber Marine, Inc.'s ("Weber Marine") Motion for Attorney Fees (Rec. Doc. 70) and Plaintiff John Joseph's opposition to same (Rec. Doc. 71). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be DENIED.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

This employment discrimination case was tried before a jury on February 13-14, 2012. Plaintiff John Joseph was employed by Defendant Weber Marine as a tugboat captain between some time in 2009 and January 26, 2010. In his complaint, Plaintiff alleged that Weber Marine fired him because of his race. Weber Marine argued that it actually based its termination decision upon

1

Plaintiff's poor job performance. The jury found that Weber Marine did not terminate Plaintiff because of his race. In accordance with the verdict, judgment for Weber Marine was entered on February 16, 2012. Weber Marine has filed a motion requesting that the Court assess attorney fees in the amount of $56,798.24 in its favor as a prevailing defendant.

**THE PARTIES' ARGUMENTS**

Weber Marine argues that Plaintiff's suit was groundless, without foundation, vexatious, and made in bad faith. Weber Marine points to what it asserts is a complete absence of evidentiary foundation for the claim that Weber Marine's reason for terminating Plaintiff was that he is African-American. Weber Marine argues that Plaintiff had no evidence that any Weber Marine employee was similarly situated and treated more favorably than he. It asserts that Plaintiff made a myriad of accusations on the stand at trial, none of which were substantiated.[1] It argues that Plaintiff could not point to any other Weber Marine boat captains who had caused the extent of property damage he

---

[1] For example, Weber Marine states that although Plaintiff testified that another captain slept on the job but was not fired, Plaintiff admitted that said captain did not cause property damage, as Plaintiff had. Also, Weber Marine states that although Plaintiff testified that another captain was heard speaking with slurred speech, Plaintiff later acknowledged that said captain ordinarily spoke with slurred speech.

did, and yet were treated differently than he.  Weber Marine avers that Plaintiff was aware of this absence of evidence during the course of discovery.  It points out that it called no witnesses at trial, the Plaintiff having called only three, and that it took the jury only 30 minutes to return a defense verdict.

Weber Marine also argues that Plaintiff's claim was brought in bad faith and was vexatious, in light of Plaintiff's history of making allegations of racial discrimination when he has been fired in the past.  First, Weber Marine alleges, Plaintiff filed an EEOC claim against former employer Florida Marine after being fired in 2008.  Second, after being fired by DMC Towing, also in 2008, he allegedly accused his employer of firing him based on his race, although DMC Towing's alleged reason for the termination was that he sank a skiff and fled the scene.  Third, Plaintiff filed the instant suit against Weber Marine after being terminated in 2010.  Weber Marine argues that this constitutes a use of the legal system for revenge and to obtain a payout, which is exactly what the applicable statute authorizing awards of attorney fees was designed to deter.  Therefore, Weber Marine argues that fees and costs totaling $56,798.24 constitute a reasonable award.

Plaintiff argues that Weber Marine is not entitled to costs and fees because Plaintiff's case was worthy of pursuit and not frivolous or wholly lacking in merit.  Plaintiff points out that he successfully defeated Weber Marine's motion for summary judgment, and he survived Weber Marine's motion for a directed verdict after presentation of Plaintiff's case at trial.  Plaintiff argues that this demonstrates the arguable merit of his lawsuit.  Additionally, he argues that there is no evidence of bad faith, and the litigation was not vexatious.  Specifically, he argues, Weber Marine's attempt to portray him as a serial civil rights litigant was spurned by the Court in pretrial motion *in limine* practice.  In the alternative only, Plaintiff argues that Weber Marine's fees are excessive, and that certain fees and costs are not recoverable.

## DISCUSSION

Section 706(k) of Title VII of the Civil Rights Act of 1964 provides that the court may, in its discretion, allow the prevailing party a reasonable attorney's fee as part of the costs.  42 U.S.C. § 2000e-5(k).  Under Section 706(k), "a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances." <u>Christiansburg Garment Co. v.</u>

4

Equal Employment Opportunity Comm'n, 434 U.S. 412, 417 (1978). However, for a prevailing *defendant* to recover attorney's fees, the court must find "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Id. at 421. In determining whether an action is frivolous, the court must inquire "whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." Jones v. Tex. Tech Univ., 656 F.2d 1137, 1145 (5th Cir. 1981).

The Supreme Court has recognized that the unpredictable nature of litigation and the possibility of decisive facts not emerging until trial are important considerations with respect to whether a suit can be considered groundless. Christianburg, 434 U.S. at 422. At the same time, the Court has recognized that a countervailing consideration may be whether a plaintiff continued to litigate a claim after it clearly became groundless. Id. It is important that in this case, this Court found that material fact issues existed at the summary judgment stage. Weber Marine makes much of the fact that at trial, Plaintiff could point to few, if any, other tugboat captains who were even similarly situated—who had allegedly caused the extent of property damage

5

within the short time frame presented by Plaintiff's history of incidents at Weber Marine.  However, it is far from clear the arguable merit that Plaintiff's case had over the course of the litigation.  Weber Marine's memorandum in support of its motion for summary judgment acknowledged that four other captains of a different race had been involved in incidents involving property damage, and were allegedly treated more favorably than Plaintiff.  Rec. Doc. 25-8, at 10-12 (referring to incidents involving Captains Boogarts, Seymour, Williams, and Ruby).  Of course, Weber Marine argued that three of those captains were involved in incidents deemed not the fault of the involved captains.  Still, it cannot be said that the case lacked a foundation where the details surrounding those and other incidents were a proper subject of discovery and a proper subject of Plaintiff's efforts at characterization of the behavior of other captains with respect to those incidents.  The Court cannot say that the basis of the claim ever became so apparently groundless that Plaintiff's decision to continue the litigation was frivolous, unreasonable, or without foundation.

   Weber Marine portrays Plaintiff's showing at trial as weak, but this is insufficient to carry the burden imposed by Section 706(k).  Weber Marine admits that testimony from John Weber

showed that Captain Ruby was involved in an accident causing significant property damage, but Weber Marine argues that Ruby did not get second and third chances, as Plaintiff did. However, prior to trial, there was an arguable basis for Plaintiff to believe that Ruby was at fault. See Rec. Doc. 25-8, at 10-12 (Weber Marine stating that three out of the four other incidents were deemed not the fault of the Weber Marine employee, stating three particular captains who were not at fault, and not making such an assertion as to Ruby). Although Weber Marine argued that Ruby was involved in only one incident, compared to Plaintiff's two incidents, Plaintiff argued as to whether he could be faulted for his incidents. See Rec. Doc. 32, at 5-6. It is important to the analysis that Plaintiff maintained his lack of fault for the allisions he was involved in. Although apparently the jury found Plaintiff's contention incredible, these were proper factual issues for the jury, as was the ultimate question of discriminatory animus. Namely, if the jury had credited Plaintiff's story that he was not at fault, this would have made an inference of discrimination in Weber Marine's termination decision an easier one to draw.

   Plaintiff's decision to continue to trial was not vexatious or frivolous, in light of the factual issues presented. Nor do

Plaintiff's short will-call witness list or the jury's relatively quick deliberations indicate that going to trial was unreasonable.  Facts such as these do not reasonably indicate a groundless suit supporting an award of attorney's fees to a prevailing Title VII defendant.  To find otherwise would be to encourage Title VII plaintiffs to introduce a high volume of evidence irrespective of any cumulative aspect thereof and would link the recovery of attorney's fees with the nature of the jury's imperceptible deliberative process.

    Nor is the Court persuaded by Weber Marine's argument that the instant lawsuit is vexatious and brought in bad faith due to Plaintiff's prior employment complaints.  Even assuming for the sake of the instant motion that Plaintiff filed an EEOC claim against one former employer and accused a second former employer of racial discrimination, these alleged facts would not prove that the instant suit is vexatious or brought in bad faith. Whether or not Plaintiff correctly or incorrectly harbored a belief that each of his recent successive employers acted with discriminatory animus, it is not this Court's role to penalize him for making allegations based on such a belief, especially where the Court lacks all the pertinent facts surrounding his previous employment.  Moreover, Weber Marine does not contest

that this was Plaintiff's first Title VII outing *in court*. To the extent that deterrence of vexatious litigation is needed and achieved through Title VII attorney fee awards to prevailing defendants, a fee award is unnecessary to accomplish any such goal in this case, where as a result of Plaintiff's apparent first time pursuing and receiving an adjudication on the merits, his claim has been publicly rejected.

The Court is not persuaded that Weber Marine has carried its burden of proving that the Plaintiff's claim was groundless, unreasonable, or frivolous. To find to the contrary would be to surrender to the "understandable temptation to engage in *post hoc reasoning*" and use of "hindsight logic" that Christianburg, 434 U.S. at 421-22, cautioned against.

For the foregoing reasons, **IT IS ORDERED** that Defendant Weber Marine's Motion for Attorney Fees (Rec. Doc. 70) is **DENIED**.

New Orleans, Louisiana, this 13th day of April, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE